Ginnie SMITH et al., Appellants,

v.

STATE FARM INSURANCE COMPANY et al., Appellees.

No. 6965.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 5, 1968.

Houston Thompson, Gene Barrington, Silsbee, for appellants.

Howell Stone, Houston, for appellees.

PARKER, Justice.

The surviving widow and an adult child of Ivy Smith, deceased, sued Sammie Wilson and his employer, State Farm Insurance Company, for damages as a result of the death of Ivy Smith, resulting from a pedestrian-automobile accident. Ivy Smith was the pedestrian. The automobile was driven by Sammie Wilson. The case was tried before a jury. The court instructed the verdict in favor of State Farm Insurance Company. The jury made affirmative findings of negligence on the part of both the deceased, Ivy Smith, and the defendant driver, Sammie Wilson. The trial court set aside the jury's answers to Special Issues Nos. 6, 7, 8, and 9, but refused to disregard the jury's answers to Special Issues Nos. 10, 11, and 12, finding that just before the collision in question, the deceased, Ivy Smith, was walking along the right hand side of the roadway in question, which was negligence and a proximate cause of the collision in question. Judgment was entered that such plaintiffs take nothing by their suit against defendants. The plaintiffs have appealed. The parties will be designated as in the trial court, plaintiffs and defendants. Plaintiffs have no point of error complaining of the take-nothing judgment against State Farm Insurance Company.

The accident occurred at 7:45 a. m. on December 4, 1967, on a public street in the middle of a block, not at an intersection of streets. It was a clear day. Sammie Wilson, the defendant, testified: He was driving a 1960 Chrysler, traveling east on a public street, at a speed of some 15 miles per hour. This street contained a black-top pavement without a center stripe. Wilson was going to pick up his mother-in-law and drive her to work. The automobile was owned by Sammie Wilson. The pedestrian, Mr. Smith, collided with his automobile. Wilson's exact testimony is as follows:

Q. Well, all right. Your automobile did collide with Mr. Smith sometime ago last year or whenever you—you do remember that.

A. No, sir, he collided with my automobile.

* * * * * *

Q. All right. All right. When did you first see or did you ever see the man that your car hit or that hit your car, whichever it was? You said, I believe, he hit your car. When did you first see the man?

A. To know it was a man?

Q. Yes.

A. When he was laying on the pavement.

Q. Now, what part of your car collided with the object that you saw to be a man when he was laying on the street?

A. None.

Q. Your car didn't ever—

A. He collided with my car.

The first time he saw Smith was after the accident, when Smith was on the pavement some four feet in front of his car, midway between the south edge of the black top and the center of the black top. When Smith came in contact with the right fender of Wilson's car, Wilson heard a bump and a sound as of a metal object hitting his automobile. He saw something that appeared to be clothes, a jacket or something; "someone had ran into the side of my car." After the accident, there were dents and scratches by which he could tell which part of his car had come in contact with the pedestrian, Smith. It was the right front fender near the radio antenna, not near the bumper of the car. There was one dent on top of the fender about three inches behind the front of the fender. At the time of the accident, Wilson's car was on the black top. Upon the impact, he ap-

plied his brakes and the skid marks on the pavement showed he was 18 inches from the right side of the pavement, which was the south side.

Hobson Bodie testified: He observed the accident from about a block away. "That he did not see the pedestrian, Ivy Smith; that the first thing he saw was the accident itself in a split second;" that the pedestrian was carrying a gun; that Bodie was headed east and, at the time he observed the accident, he was about half way between Highway 96 and Fourth Street; that the accident occurred about half way in the next block between Fourth and Third, when the south side of Wilson's car was on the black top two to three feet from the south edge of the black top; that the impact occurred around the right front fender; that Sammie Wilson apparently jerked the car to the left and stopped about four or five feet from the edge of the black top; that he could not *see* whether the man was on the pavement or off the pavement at the time of impact; that he observed tire marks about four or five feet long left by the Wilson car from the point of impact to the place it stopped. (Emphasis ours.)

Thelma Busby testified: She was a daughter of Ivy Smith; that at the time of the accident, Ivy Smith was on his way from his home to her home; that he had planned to go hunting with her husband.

Neva Moulper testified, according to the narrative statement of facts: That shortly before the accident, she was parked at a service station getting gasoline; that she saw an old man walk by "in front of me" walking down the road with a gun; that she saw him walking along the edge of the road and watched him until she couldn't see him any longer; that she pulled out and turned down the road he was walking down; that she saw Mr. Wilson's car stopped; that Mr. Wilson came running from the front of his car and over to the window of her car and said, "Call an ambulance, I

have hit a man;" that she left to get the ambulance.

Mr. Smith died as a result of the accident. His gun was broken.

Special Issues Nos. 6, 7, 8, and 9, and the jury's answers thereto, are as follows:

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that Ivy Smith, just before the occurrence in question, failed to keep such a lookout as would have been kept by a person of ordinary prudence in the exercise of ordinary care acting under the same or similar circumstances?

Answer "We do" or "We do not".

ANSWER *We do*

If you have answered Special Issue No. 6 "We do" and only in that event, then answer:

## SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the occurrence in question?

Answer: "We do" or "We do not".

ANSWER *We do*

## SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that on the occasion of the occurrence in question, Ivy Smith failed to yield the right-of-way to the Defendant vehicle?

You are instructed in connection with the foregoing issue that:

Every pedestrian crossing a roadway at any point other than within a

marked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the highway.

Notwithstanding the foregoing provisions every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary.

Answer: "We do" or "We do not".

Answer: *We do*

If you have answered Special Issue No. 8 "We do" and only in that event, then answer:

## SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the collision in question?

Answer: "We do" or "We do not".

ANSWER *We do*

By cross assignments of error, the defendant contends the trial court erred in setting aside and disregarding the jury's answers to each of Special Issues Nos. 6, 7, 8, and 9, because the jury's answers to each of such issues are supported by the evidence.

■ On the question of proper lookout by Ivy Smith, there is no direct evidence as to Smith's lookout. There is circumstantial evidence thereon. There were dents upon the top of the right fender of Wilson's car. From this, it can be inferred that Ivy Smith was standing. Regardless of which direction Smith faced immediately before the accident, it may reasonably be inferred that he failed to keep a proper lookout when it is undisputed that Wilson was driving his car on the black top at 15 miles per hour. Lynch v. Ricketts, 158

Tex. 487, 314 S.W.2d 273; Hardage v. Rouly, Tex.Civ.App., 349 S.W.2d 616, ref. n. r. e.; Gonzalez v. Perry, Tex.Civ.App., 390 S.W.2d 382, ref. n. r. e.; Plata v. Gohman, Tex.Civ.App., 359 S.W.2d 163, ref. n. r. e.; Pooler v. Klobassa, Tex.Civ.App., 413 S.W.2d 768, n. w. h.

The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, Texas Rules of Civil Procedure, therefore, if the record discloses any evidence of probative value which with inference that may be properly drawn therefrom, will reasonably support the same. Lynch v. Ricketts, supra.

Proximate cause is also established by the evidence that the collision occurred on the black top, the traveled portion of the street, and the evidence that Smith moved to collide with the right-hand side of the automobile. If he had been on the traveled portion of the highway immediately before the accident, he would have been hit by the bumper of the automobile.

On the question of Smith's failing to yield the right-of-way to the defendant vehicle, the evidence supports the jury's findings. Ivy Smith was not a child; he was a grown man. Article 6701d, Section 78(a), Vernon's Ann.Civ.St. reads as follows:

Sec. 78(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the highway.

■ The evidence shows that Sammie Wilson's car was traveling on the black top, in the travel lane on the right-hand side of the road. He never left the roadway. The impact occurred by all estimates between one and a half to three feet from

the edge of the roadway. It is not possible to ascertain Smith's purpose in being out onto the roadway, that is, whether he was attempting to cross or had merely wandered onto the travel portion. But the Statute requires no such subjective intent. It is sufficient that the collision occurred in the middle of the block in the paved portion of the road. Under such circumstances, Sammie Wilson had the right-of-way and Smith, entering the roadway at that point, failed in his duty to yield the right-of-way to him.

Defendant's cross assignments of error with reference to the findings of the jury to Special Issues Nos. 6, 7, 8, and 9 are sustained.

Plaintiffs contend the trial court erred in overruling plaintiffs' motion for judgment non obstante veredicto, for there is no evidence of probative force to support the affirmative finding that the deceased, Ivy Smith, was walking along the right-hand side of the roadway at the time of the collision, which was negligence and a proximate cause of the collision; and further, that such affirmative findings to Special Issues Nos. 10, 11, and 12 are not findings of contributory negligence of deceased, Ivy Smith, under the facts and circumstances of this case. Plaintiffs also contend there is insufficient evidence to support the findings of the jury in answer to Special Issues Nos. 10, 11, and 12.

Article 6701d, Section 81, V.A.C.S. reads as follows:

Sec. 81. (a) Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

(b) Where sidewalks are not provided any pedestrian walking along and upon a highway shall when possible walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction.

(c) No person shall stand in a roadway for the purpose of soliciting a ride from the driver of any vehicle.

The Statute clearly imposes a duty upon pedestrians to walk, when possible, on the left side of the roadway or its shoulder facing traffic. This standard of care is for the protection of the pedestrian and designed to prevent an occurrence such as the one involved in this cause.

The jury answered "we do" in response to Special Issue No. 10, phrased as follows:

Do you find from a preponderance of the evidence that just before the collision in question the Deceased, Ivy Smith, was walking along the right hand side of the roadway in question?

In view of the facts that defendant's cross assignments of error have been sustained, all of plaintiffs' points of error become immaterial and are not considered. Having sustained defendant's cross assignments of error, the judgment of the trial court is correct that plaintiffs take nothing as against defendant, regardless of the merits of plaintiffs' points of error. It is therefore unnecessary for us to pass upon plaintiffs' points of error under Rule 434 Texas Rules of Civil Procedure.

Affirmed.